TRAVELERS INSURANCE CO. *v.* SCHOOL DISTRICT NO. 1, FAYETTE TOWNSHIP, HILLSDALE COUNTY.

1. MASTER AND SERVANT—"COST PLUS" PLAN DOES NOT MAKE AN EMPLOYEE OF AN INDEPENDENT CONTRACTOR.

The "cost plus" method of payment does not convert an independent contractor into an employee.

2. SAME — WHERE NO RIGHT TO CONTROL WORK RESERVED CONTRACTOR NOT AN EMPLOYEE.

Where a contract for the erection of a school building on the cost plus plan with a fixed fee reserved to the school board no right of control over the work, the contractor was an independent contractor rather than an employee of the board.

3. INSURANCE—CONTRACTS—SCHOOL BOARD NOT LIABLE FOR INSURANCE ORDERED BY INDEPENDENT CONTRACTOR.

An insurance company could not maintain an action against a school board for the premium on workmen's compensation insurance ordered by an independent contractor, although the contract between the contractor and the board for the erection of a school building provided that the board should pay the premium.

Error to Hillsdale; Lamb (Fred S.), J., presiding. Submitted April 4, 1928.    (Docket No. 27, Calendar No. 33,048.)    Decided June 4, 1928.

Assumpsit by the Travelers Insurance Company against school district No. 1, Fayette township, Hillsdale county, for a premium on a policy of insurance. Judgment for defendant.    Plaintiff brings error. Affirmed.

*Dunham & Cholette,* for appellant.

*Victor Hawkins,* for appellee.

243—Mich.—7.

FEAD, C. J.    This is a companion case to *Lather*
v. *School District, ante,* 90.    On February 25, 1924,
George E. Lather & Sons entered into a written con-
tract with defendant, pertinent features of which are:
The defendant "hereby employs the contractor to
erect and complete the general construction of a school
building for said school district," at a guaranteed cost
to defendant of not more than $77,000 plus the con-
tractor's fixed fee of $8,000, with 25% of the saving
if the cost be less; the contractor was to purchase all
materials and supplies at the best prices obtainable,
the cost to be paid by defendant, and no orders for
materials were to be made without defendant's ap-
proval in writing; no excessive wage scales were to
be allowed by contractor without written approval of
defendant; the construction was to be done in accord-
ance with plans and specifications of defendant's
architect and the contractor charged with the duty of
suggesting changes to reduce cost, but the changes
were not to be effective without approval of defendant
and the architect; the contractor was to furnish all
equipment, personal supervision and office overhead
and expense and to make progress satisfactory to the
defendant's board and architect; defendant was to pay
for the workmen's compensation insurance; the con-
tractor was to give a bond for faithful performance
of the contract, the defendant to pay the premium; the
details of paying invoices for materials and meeting
pay rolls were to be worked out by contractor and the
secretary of defendant's board; the contractor's fee.
was to be paid in monthly installments in proportion
to the work done, on certificate of the architect; the de-
fendant could cancel the contract, pay the contractor
the then earned portion of his fee and complete the
building itself, on certificate of the architect "that the
contractor is not carrying on the requirements of this
contract on his part in such a manner as to enable

the board to complete the same for the amount of money herein specified, or within the time herein required;" no time was stated for completion.

The particular clause under which plaintiff claims is:

"The board is to pay the insurance premium for protection under the workmen's compensation act, and the premium on the bond required for the faithful performance of this agreement on the part of the contractor."

For several years Mr. Lather had carried a workmen's compensation policy with plaintiff, covering his construction activities throughout the State. A rider, covering the school job, was attached to the policy by plaintiff's agent, to whom Lather showed his contract. Bills for the premium were sent to Lather. Defendant first knew of claim of liability to plaintiff on December 19, 1924, when the work was well along. It took the position "our contract to pay compensation insurance is with George Lather & Sons and not your company." Plaintiff had no order from defendant for the insurance nor did it deal with defendant in connection with the policy during its application to the school contract. Plaintiff brought this suit to recover the premium for the compensation insurance on the theory that Lather & Sons were agents of defendant, not independent contractors. Defendant had judgment in the circuit court.

Plaintiff sold the insurance to Lather, not to the defendant, nor on its credit. Unless the contractor was an agent of the defendant, the plaintiff, not being a party to the contract, acquired no rights thereunder and could not maintain suit thereon. *Clay Lumber Co.* v. *Hart's Branch Coal Co.*, 174 Mich. 613.

Plaintiff contends that the case is ruled by *Opitz* v. *Hoertz*, 194 Mich. 626. The contract at bar is distinguishable, however, in that it negatives that com-

pleteness of control characteristic of the relation of principal and agent or master and servant and has many incidents which are earmarks of an independent contract. The "cost plus" method of payment does not convert an independent contractor into an employee. *Carleton* v. *Foundry & Machine Products Co.*, 199 Mich. 148 (19 A. L. R. 1141). The contractor at bar guaranteed the construction at a stated sum, the contract reserved to defendant no control over the method, time or manner of performing the work, the contractor could not be discharged except for cause pertinent to failure to complete within the guaranteed sum, the control of costs by defendant was not directory of the performance of the work but was merely a precaution against exceeding the contract price, the work was such as is usually done by an independent contractor, and independent contracting was the general occupation of Lather & Sons. In 19 A. L. R. 1210, is an exhaustive note, with a multitude of citations, classifying the tests of an independent contractor. The relation at bar meets those tests. Of our own decisions, the case is more nearly in point with *Carleton* v. *Foundry & Machine Products Co., supra,* than with *Opitz* v. *Hoertz, supra.*

Plaintiff's counsel has suggested that the completeness of control of the work by the defendant was more fully set out in the record of *Lather* v. *School District, ante,* 90, and asked reference thereto. There was considerable disputed testimony as to the control actually exercised by defendant in the course of construction, but, as has been often held by this court, *Tuttle* v. *Embury-Martin Lumber Co.,* 192 Mich. 385, the essential question is not the fact of actual interference but the right of control. The specifications, as set out in the Lather record, show such persuasive indications of an independent contract as that defendant should furnish 125 M of brick without cost to the

contractor, the contractor should remove, at his own expense, materials not up to specifications, or, in the alternative, the architect could accept them with deduction from the contract price, and extras were provided for at a price to be agreed on, or, in absence of agreement, at a value to be set by the architect.   The only control of operation the defendant retained was to require the removal of any workman or workmen if the interests of the defendant so required, but the discharge had to come from the contractor.   Defendant had no authority to hire or discharge laborers.

The judgment is affirmed.

NORTH, FELLOWS, WIEST, CLARK, McDONALD, POTTER, and SHARPE, JJ., concurred.